IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 09 CR 105 |
| | ) | |
| CHRISTOPHER G. KELLY, and | ) | |
| BCI COMMERCIAL ROOFING, INC., | ) | Hon. Charles R. Norgle |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES R. NORGLE, District Judge

Before the Court is the Government's Santiago Proffer, which describes the Government's basis for asserting the existence of a conspiracy or joint venture between Defendant Christopher G. Kelly ("Kelly") and an individual the Government describes as "Co-Schemer A." Through its Santiago Proffer, the Government proposes to offer evidence of coconspirator statements under Federal Rules of Evidence 801(d)(2)(E) and under United States v. Santiago, 582 F.2d 1128 (7th Cir. 1987). For the following reasons, this Court finds that the Government has met its burden by a preponderance of the evidence under Santiago and Bourjaily to show that: (1) a conspiracy existed; (2) Kelly and Co-Schemer A became part of the conspiracy; and (3) coconspirator statements were made during the course and in furtherance of the conspiracy. Accordingly, coconspirator statements are admissible against Kelly.

### I. THE INDICTMENT

On February 5, 2009, a federal grand jury returned an Indictment alleging that from September 1998 to May 2006, Kelly and Co-Defendant BCI Commercial Roofing, Inc. ("BCI") participated in a scheme intended to defraud two commercial airlines, American Airlines

1

("American") and United Airlines ("United"). The Indictment alleges that Kelly and BCI, along with Co-Schemer A, president and owner of Company A, fraudulently steered contracts for roofing work at American and United's O'Hare facilities to BCI by falsely representing to American and United the estimated costs of roofing projects, and manipulating the bidding process for those projects, in return for kickbacks from Kelly and BCI to Co-Schemer A and Company A. The kickbacks allegedly totaled at least $450,000. Kelly, BCI, Co-Schemer A, and Company A, are alleged to have fraudulently deceived American and United into awarding four roofing construction contracts to BCI totaling approximately $8.5 million. The Indictment charges Kelly with eleven counts of mail fraud under 18 U.S.C. § 1341, and six counts of money laundering under 18 U.S.C. § 1957(a).

## II. THE ADMISSION OF A COCONSPIRATOR'S STATEMENTS

Under FED. R. EVID. 801(d)(2)(E) statements made by a coconspirator during the course and in furtherance of the conspiracy are not hearsay. United States v. Williams, 44 F.3d 614, 617 (7th Cir. 1995). Rule 801(d)(2)(E) applies not only to conspiracies, but also to joint ventures. United States v. Kelly, 864 F.2d 569, 573 (7th Cir. 1989). There need not be a formal conspiracy charge for statements to be admitted under Rule 801(d)(2)(E), if the government establishes that a "criminal venture existed and that the statements took place during and in furtherance of that scheme." United States v. Reynolds, 919 F.2d 435, 439 (7th Cir. 1990); Kelly, 864 F.2d at 573. For a statement to be admissible under Rule 801(d)(2)(E), the government must prove by a preponderance of the evidence that (1) a conspiracy existed; (2) the defendant and the person making the statement were members of the conspiracy; and (3) the statement was made during

2

the course and in furtherance of the conspiracy. United States v. Brookins, 52 F.3d 615, 623 (7th Cir. 1995); United States v. Stephens, 46 F.3d 587, 597 (7th Cir. 1995).

District Courts make a ruling on the admissibility of a coconspirator's statements pursuant to Rule 104(a) before they are admitted at trial. United States v. Santiago, 582 F.2d 1128, 1130-35 (7th Cir. 1978); United States v. Cox, 923 F.2d 519, 526 (7th Cir. 1991). In determining whether a defendant was a member of a conspiracy for the purposes of Rule 801(d)(2)(E), the court can consider the statements sought to be admitted. Williams, 44 F.3d at 617. The government is not required to prove that there was a formal agreement, and circumstantial evidence indicating the defendant's membership in the conspiracy can also be considered. United States v. Schumpert, 958 F.2d 770, 773 (7th Cir. 1992). To show that a defendant was involved in the conspiracy, the government must show that he (1) knew of the conspiracy, and (2) intended to associate himself with the criminal scheme. United States v. Sullivan, 903 F.2d 1093, 1098 (7th Cir. 1990).

The preferred way for the government to make its preliminary "coconspirator statement" factual showing is by the filing of a pretrial written proffer of the government's evidence. U.S. v. Stephenson, 53 F.3d 836, 842, 43 (7th Cir. 1995). The Court should consider the proferred coconspirator statements in determining both the existence of a conspiracy and a defendant's participation in it. Bourjaily v. United States, 483 U.S. 171, 180 (1987). The admissibility of conspirators' declarations "is not contingent on demonstrating by non-hearsay evidence either the conspiracy or a given defendant's participation." United States v. Martinez de Ortiz, 907 F.2d 629, 634 (7th Cir. 1990)(en banc). The contents of the proffered coconspirator statements "are not alone sufficient" to establish the existence of a conspiracy and a defendant's participation in

it. FED. R. EVID. 801(d)(2)(E). The Court must consider in addition [to the coconspirator statements themselves] the circumstances surrounding the statement, such as the identity of the speaker, the context in which the statement was made, or the evidence corroborating the contents of the statement. United States v. Zambrana, 841 F.2d 1320, 1344-45 (7th Cir. 1988).

### A. Membership in and the Existence of the Conspiracy

The evidence showing a defendant's membership in a conspiracy may be either direct or circumstantial evidence. United States v. Irorere, 228 F.3d 816, 823 (7th Cir. 2000); United States v. Patterson, 213 F. Supp. 2d 900, 910-11 (N.D. Ill. 2002). Indeed, because of the secretive character of conspiracies, direct evidence is elusive, and hence the existence and the defendants' participation can usually be established only by circumstantial evidence. United States v. Redwine, 715 F.2d 315, 319 (7th Cir. 1983).

> A conspiracy may exist even if a coconspirator does not agree to commit or facilitate each and every part of the substantive offense. [citation omitted] The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other. [citation omitted] If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators.

Salinas v. United States, 522 U.S. 52, 63-4 (1997).

The government need not prove that a defendant knew each and every detail of the conspiracy or played more than a minor role in the conspiracy. Any of the defendants may be found guilty even if they joined or terminated their relationship with core conspirators at different times. United States v. Morrow, 971 F.Supp. 1254, 1256-57 (N.D. Ill. 1997).

### B. The "In Furtherance of" Requirement

The Court can consider a proffered coconspirator statement itself in determining whether it was made "in furtherance of" the conspiracy. United States v. Shoffner, 826 F.2d 619, 627

4

n.12 (7th Cir. 1987). In addition, in determining whether a statement was made "in furtherance" of the conspiracy, courts look for a reasonable basis upon which to conclude that the statement furthered the conspiracy. Id. at 628; United States v. Oliva, No. 02 CR 275, 2003 WL 367062, at *6 (N.D. Ill. Feb. 12, 2003). Under the reasonable basis standard, a statement may be susceptible to alternative interpretations and still be "in furtherance of the conspiracy." Shoffner, 826 F.2d at 628. Yet, the statement need not have been made exclusively, or even primarily, to further the conspiracy in order to be admissible under the coconspirator exception. United States v. Johnson, 200 F.3d 529, 533 (7th Cir. 2000); United States v. Powers, 75 F.3d 335, 340 (7th Cir. 1996). Rather, the record need only contain some reasonable basis for concluding that the statement in question furthered the conspiracy in some respect. Stephenson, 53 F.3d at 845. Finally, it is immaterial that statements otherwise "in furtherance" were made to a government witness or agent. Mahkimetas v. United States, 991 F.2d 379, 383 (7th Cir. 1985).

The Government has a relatively low burden of proof on the issue of whether a statement is made "in furtherance" of a conspiracy. Shoffner, 826 F.2d at 628. Such statements can take on a variety of forms, and the Seventh Circuit has upheld the admission of a wide assortment of coconspirators statements. For instance, statements used to recruit potential coconspirators, id., update others on a conspiracy's progress, United States v. Potts, 840 F.2d 368, 371 (7th Cir. 1987), control damage to an ongoing conspiracy, United States v. Van Daal Wyk, 840 F.2d 494, 499 (7th Cir. 1988), inform or reassure the listener, United States v. Sophie, 900 F.2d 1064, 1073 (7th Cir. 1990), plan or review co-conspirators' exploits, United States v. Molt, 772 F.2d 366, 369 (7th Cir. 1985), express updates on the status of the conspiracy and how the status affected the future of the conspiracy, United States v. Doyle, 771 F.2d 250, 256 (7th Cir. 1985), and

attempt to conceal or protect the conspiracy, United States v. Kaden, 819 F.2d 813, 820 (7th Cir. 1987), have been approved as statements made "in furtherance of" conspiracies. In turn, the court recognizes that "conspiracy is serious business, and talk about it among or by the conspirators should not be presumed to be unrelated to the accomplishment of the conspiracy's goals." United States v. Pallais, 921 F.2d 684, 688 (7th Cir. 1990).

Also, statements made during the course of and in furtherance of a conspiracy, even at its beginning stages, are admissible against those who arrive late to join a going concern. Potts, 840 F.2d at 372. Moreover, conversations made by conspirators to prospective coconspirators for membership purposes are acts in furtherance of the conspiracy. Shoffner, 826 F.2d at 628. A conspirator who has become less active in the conspiracy nevertheless is liable for his conspirators' further statements unless he openly disavows the conspiracy or reports it to the police. United States v. Maloney, 71 F.3d 645, 654-55 (7th Cir. 1995)(mere inactivity on the part of the conspirator is not sufficient to constitute withdrawal).

Statements that are "part of the information flow between conspirators intended to help each perform his role" are statements "in furtherance." United States v. Gajo, 290 F.3d 922, 929 (7th Cir. 2002); United States v. Hunt, 272 F.3d 488, 495 (7th Cir. 2001). Assurances that a coconspirator can be trusted or relied upon to perform his role are considered to further the conspiracy. United States v. Buishas, 791 F.2d 1310, 1315 (7th Cir. 1986). Statements designed to conceal a conspiracy also are deemed to be "in furtherance" where ongoing concealment is a purpose of the conspiracy. Gajo, 290 F.3d at 928-29; United States v. Markowski, 772 F.2d 358, 366 (7th Cir. 1985). Therefore, "statements made to keep coconspirators informed about the

6

progress of the conspiracy, to recruit others or to control damage to the conspiracy are in furtherance of the conspiracy. Stephenson, 53 F.3d at 845.

## C. Confrontation Issues and Admissions

"The requirements for admission under 801(d)(2)(E) are identical to the requirements of the Confrontation Clause," so there is "no constitutional problem" once the Rule's requirements are met. Bourjaily, 483 U.S. at 182-83; United States v. Ceballos, 302 F.3d 679, 689 n.2 (7th Cir. 2002)(confrontation clause of the Sixth Amendment does not apply to statements admitted in furtherance of a conspiracy); United States v. Patterson, 171 F.Supp.2d 804, 806 (N.D. Ill. 2001)(citing United States v. Singleton, 125 F.3d 1097, 1107 (7th Cir. 1997)). In weighing the admissibility of the proffered coconspirator statements, the trial court does not consider whether the co-conspriator/declarant is "unavailable," United States v. Inadi, 475 U.S. 387, 400 (1986), nor does the court engage in an independent inquiry into the "reliability" of a proffered statement. Bourjaily, 483 U.S. at 182-83.

Various statements made during the course of a conspiracy are independently admissible and do not require a Rule 801(d)(2)(E) analysis. A defendant's own statements, for example, are admissible against him pursuant to Rule 801(d)(2)(A), without reference to the coconspirator statement rule. A defendant's own admissions are powerfully relevant to establish the factual predicates for the admission of coconspirator statements against him. United States v. Godinez, 110 F.3d 448, 455 (7th Cir. 1997). The coconspirator statement rule is also implicated where the relevant verbal declaration is not a "statement" within the meaning of Rule 801(a), that is, not an "assertion" subject to verification; an example would be an order or a suggestion. See United States v. Tuchow, 768 F.2d 855, 868 n.18 (7th Cir. 1985).

7

Moreover, the coconspirator statement analysis is also not implicated where the relevant verbal declaration is not offered in evidence to prove the truth of the matter asserted, and therefore does not constitute "hearsay" as defined by FED. R. EVID. 801(c). Accordingly, statements by alleged coconspirators may be admitted against a defendant, without establishing the Bourjaily factual predicates, when such statements are offered simply to show, for instance, the existence, the illegality, or the nature or scope of the charged conspiracy. Gajo, 290 F.3d at 929-30.

### III. THE GOVERNMENT'S SANTIAGO PROFFER

Pursuant to these standards, and after close review of the circumstances outlined within the Government's Santiago Proffer, this Court finds that the Government has shown, by a preponderance of the evidence, that Kelly either conspired or entered into a joint venture to commit the offenses with which he is charged.

The Government indicates that its evidence will show the following. Kelly was president and owner of BCI, which provided commercial roofing services. Co-Schemer A was the president and owner of Company A, which provided consulting services regarding the construction, repair, and replacement of roofs. American and United are commercial airline companies with facilities at O'Hare International Airport in Chicago, Illinois.

In September 1998 and April 2001, American and Company A entered into consulting agreements in connection with various roofing projects. In May 2004, United and Company A entered into a similar agreement. These agreements contained confidentiality provisions prohibiting Company A from disclosing any confidential information related to these projects. In order to obtain these consulting contracts, Kelly and Co-Schemer A agreed that Company A

8

would provide consulting services to American and United at a lower cost than other consulting companies. Kelly and Co-Schemer A further agreed that once Company A obtained the consulting work, Co-Schemer A would fraudulently steer the roofing contracts to Kelly and BCI in return for hidden kickbacks.

In order to implement this scheme, Kelly and Co-Schemer A developed a fraudulently inflated budget for the roofing projects, which Co-Schemer A presented to the airlines without disclosing that the budgets were in excess of the actual costs required to complete the projects. Based on the fraudulently produced budget numbers, Co-Schemer A then produced project booklets for prospective bidders. After producing the project booklets, Co-Schemer A typically held pre-bid meetings at which potential bidders reviewed the booklet and the project site, and asked questions. Kelly sent employees of BCI to these meetings to create the false impression that BCI was participating in the bidding process in the same manner as the other bidders.

Kelly and Co-Schemer A also agreed that Co-Schemer A would disclose the fraudulently inflated budget figure – which was American's and United's confidential information – to the potential bidders in order to induce them to submit bids that were at or near that figure. Kelly would then submit a bid on behalf of BCI intended to undercut the other bids, but still provide for a profit for BCI. On other occasions, Co-Schemer A, in order to assist Kelly and BCI in obtaining roofing projects with the American and United, falsified bids higher than BCI's bid in order to make it appear that a legitimate bidding process had taken place, and that BCI's bid was the lowest.

Kelly sometimes provided kickbacks to Co-Schemer A and Company by arranging for Co-Schemer A and Company A to falsely invoice Kelly and BCI for roofing consulting services

that were never performed. On other occasions, Kelly passed money through third parties in order to complete the kickbacks. These third-party transactions were disguised through a series of false invoices typically created by an individual the Government refers to as Employee A, who was directed by Co-Schemer A.

In concluding its Proffer, the Government outlines the some of the specific contracts that were bid-rigged in the above manner: Kelly and Co-Schemer A rigged bids for American Hangar #1 in 1998; an American Air Cargo Building in 2001; United's Service Center Hangar in 2004; and the United L-Check Hangar in 2005. During the bidding process for each of these projects, Kelly, BCI, Co-Schemer A, and Company A fraudulently induced American and United into awarding contracts in the amount of $8.5 million. This scheme was designed to provide profits to BCI and kickbacks to Company A. Kelly ultimately kicked back $137,000 to Company A for the American Air Cargo Building project, $132,000 for the United Service Center Hangar project, and $187,000 for the United L-Check Hangar project.

## IV. CONCLUSION

After examining the Government's Proffer, the Court finds that the Government has met its burden under Santiago to show by a preponderance of the evidence that either a conspiracy or joint venture existed and that Kelly became part of that conspiracy or joint venture. The Government may therefore offer evidence of coconspirator statements under FED. R. EVID. 801(d)(2)(E) in support of its cases against Kelly.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

Dated: September 4, 2009